[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10029

_____

D.C. Docket No. 0:11-cr-60273-WPD-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID CLUM, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 15, 2012)

Before HULL and BLACK, Circuit Judges, and GOLDBERG,[*] Judge.

PER CURIAM:

_____

[*]Honorable Richard W. Goldberg, United States Court of International Trade Judge,
sitting by designation.

Defendant David Clum, Jr., appeals the district court's pretrial detention order after being indicted for various offenses related to tax fraud. After review of the briefs on appeal and consideration of the record, we affirm.

## I. BACKGROUND

### A. The Indictment

Defendant Clum and several codefendants were indicted in the Southern District of Florida on one count of conspiring to defraud the United States, in violation of 18 U.S.C. § 286, and forty-one counts of making false claims, related to a scheme to file fraudulent tax returns, in violation of 18 U.S.C. § 287. Defendant Clum was a principal in PMDD Services. The indictment alleged that Clum and his codefendants operated a scheme, primarily through PMDD Services, to help taxpayers obtain fraudulent tax refunds. The scheme was premised upon "redemption theory," which espouses that individuals are not responsible for their personal debts and may seek money from the IRS to repay those debts.

According to the indictment, PMDD Services prepared false IRS Forms 1099-OID (Original Issue Discount) on behalf of its clients. These tax forms falsely reported that the clients' creditors had withheld large amounts of the clients' income as taxes. The clients' tax returns then requested a refund of the money falsely claimed to have been withheld. Clum's scheme involved at least

2

180 clients from 30 different states, and resulted in the submission of fraudulent tax claims exceeding $120 million.

## B.    First Detention Hearing

Clum was arrested at his home in Tennessee.  A federal magistrate judge in Tennessee held the initial pretrial detention hearing.  During that hearing, the government introduced testimony from several law enforcement agents who had participated in Clum's arrest and initial detention.  According to their testimony, when the agents came to Clum's residence to arrest him, Clum physically resisted being handcuffed and said obscenities.  During the car ride from his home to the U.S. Marshals' office, Clum talked about the government doing the bidding of the banks, and told the agents that they were slaves to the system.

At the U.S. Marshals' office, Clum refused to provide any basic details about himself, such as his name or date of birth, and physically resisted being fingerprinted and having his photograph taken.  During his initial appearance before the magistrate judge in Tennessee, Clum refused to take a seat as instructed, and had to be forcibly placed into the seat.

In light of the above testimony, the magistrate judge expressed concern about releasing Clum.  Addressing the court, Clum apologized profusely for his behavior during and after arrest, asked for the court's mercy, and explained that he

3

was surprised and angry at being arrested and that he feared for his family.  Clum stated that his actions were "absolutely unconscionable" and out of character. Furthermore, Clum's wife took the stand and assured the magistrate judge that Clum would not flee and that she would adequately oversee him as a third-party custodian upon his release.

At the end of the hearing, the magistrate judge ordered Clum released on a $25,000 unsecured bond.  However, the government moved to stay his release pending appeal, and the district court in Florida granted the government's motion.

## C.    Government's Appeal to the District Court

The government filed an appeal in the Florida district court from the magistrate judge's order of release.  In its brief, the government argued, inter alia, that Clum was a flight risk because he resisted arrest, refused to cooperate with law enforcement, and had a history of defying the authority of the courts.  The government also argued that there was overwhelming evidence of Clum's guilt and that he faced over 20 years of incarceration if convicted.  The government pointed to evidence that Clum was a principal in PMDD Services, the corrupt tax preparation firm that prepared numerous fraudulent tax returns on behalf of its clients, and that Clum marketed the tax fraud scheme knowing that it was illegal.

To support its appeal, the government submitted a number of exhibits,

4

which included (1) documents showing that Clum had been convicted in 2006 for contempt of court due to his failure to appear in court, and was sentenced to 10 days in jail and fined $250; (2) a letter from Clum to the court in the contempt proceeding, in which Clum gave a frivolous justification for his failure to respond to the court's show-cause order; (3) a transcript from one of Clum's seminars promoting the fraudulent tax scheme, wherein he told his audience how the government used tanks, helicopters, and over 40 SWAT members to evict him from his property in Virginia; (4) another seminar transcript wherein Clum (a) advised his audience to not "go into a courtroom," (b) stated that the last time he was arrested, he refused to be fingerprinted or photographed, or to answer questions willingly, and (c) advised that he would question the authority of the judge if brought to court; (5) documents evidencing Clum's involvement in the tax-fraud scheme; and (6) a transcript of Clum's first detention hearing, reflecting the agents' testimony described above.

The district court granted the government's appeal and ordered Clum detained.

## D.    Second Detention Hearing

Clum then moved for a de novo evidentiary hearing, which the district court granted.  At the second detention hearing, the government proffered its

5

aforementioned appeal and corresponding exhibits as evidence in favor of detention, and argued that Clum's anti-government ideology showed him to be a flight risk and that his wife would not be an appropriate third-party custodian.

Clum's counsel, in turn, presented a number of factors in support of Clum's release, including the following: (1) Clum had lived in Tennessee with his wife and two daughters continuously for six years, had rented their current residence for the past two years, and had renewed the lease for another year; (2) Clum had no contacts outside of the United States; (3) Clum was heavily involved in the lives of his family members and had served honorably in Vietnam; (4) once Clum learned that the scheme he was involved in was likely illegal, he stopped participating in it; (5) Clum's circumstances were similar to those of his codefendants, who were released on only a signature bond; (6) the IRS asked Clum to undergo an interview prior to his arrest, and Clum complied by speaking with them for several hours, without trying to flee during or after the interview; and (7) Clum had placed himself at the mercy of the magistrate judge in Tennessee, and the magistrate judge believed Clum to be good candidate for pretrial release.

Clum's wife also addressed the court, stating that Clum was involved in his children's lives, that he would not flee and would obey court orders, and that she

was willing to submit to the authority of Pretrial Services and monitor her husband as required by law.

### D.    District Court's Detention Order

Following the hearing, the district court ordered Clum detained without bond.  In its detention order, the district court found that there was no presumption of flight risk or danger to the community, but also found that the weight of the evidence against Clum was significant and that his prior anti-government statements during promotional seminars indicated that he was a flight risk.  The court described Clum's arrest and post-arrest behavior, including his physical resistance to being handcuffed, his use of obscenities and tax-protestor rhetoric, and his refusal to cooperate with law enforcement.

The court also found that, while Clum had only a minor criminal record, he had a prior conviction for failure to appear and had presented a frivolous justification for failing to appear.  Moreover, Clum had no ties to the community and previously had moved from Virginia to Tennessee due to government harassment.  The court further found that Clum's promises of cooperation to the magistrate judge in Tennessee were belied by his actions.

Based on these findings, the court concluded that Clum represented a serious risk of flight and that no condition or combination of conditions would

7

reasonably assure his appearance.  Clum now appeals.

## II. DISCUSSION

### A.    Standard of Review and the Bail Reform Act[1]

In reviewing a pretrial detention order under the Bail Reform Act, we review the district court's factual findings for clear error and the application of law to those facts de novo.  United States v. Hurtado, 779 F.2d 1467, 1471-72 (11th Cir. 1985).  Issues relating to a defendant's individual characteristics and the threat posed by his release are factual questions reviewed only for clear error.  Id. at 1472.  The district court has "substantial latitude in determining whether pretrial detention is appropriate."  United States v. King, 849 F.2d 485, 487 (11th Cir. 1988).

The Bail Reform Act provides that a court "shall order the pretrial release of the person" unless it determines "that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).  If the district court "finds that no condition or combination of conditions will reasonably assure [1] the appearance of the person as required and [2] the safety of any other person and the

---

[1]See Bail Reform Act of 1984, Pub. L. 98-473, § 202, 98 Stat. 1837, 1976 (1984) (codified as amended at 18 U.S.C. §§ 3141-56).

8

community," then the person must be ordered detained before trial.  Id. § 3142(e).

Either ground may support an order of detention.  King, 849 F.2d at 488-89.  Here,

the district court based its decision only on the first ground, the risk of flight.

In determining whether the defendant poses a flight risk, a court must

consider several factors, including (1) the "nature and circumstances" of the

charged offense, (2) the weight of the evidence against the defendant, and (3) the

defendant's history and characteristics, including his character, his family and

community ties, his past conduct, his criminal history, and his "record concerning

appearance at court proceedings."  18 U.S.C. § 3142(g).

At detention hearings, "[t]he rules concerning admissibility of evidence in

criminal trials do not apply," 18 U.S.C. § 3142(f), and the parties may proceed

solely by proffer, United States v. Gaviria, 828 F.2d 667, 669 (11th Cir. 1987).

The government need only demonstrate by a preponderance of the evidence that

the person poses a risk of flight.  King, 849 F.2d at 489 & n.3.[2]

**B.    Analysis**

After review, we conclude that the district court did not err in ordering

Clum detained.  The district court found that the significant evidence of Clum's

---

[2] Under the Bail Reform Act, certain criminal charges carry a presumption that no condition or combination thereof would assure the defendant's appearance, but none of the charges in this case carry such a presumption.  See 18 U.S.C. § 3142(e)(3).

9

guilt, his prior conviction for failing to appear in court, his anti-government statements at a seminar, his physical resistance to being arrested, his post-arrest refusal to cooperate with authorities, and his lack of ties to the community all demonstrated that Clum presented a serious risk of flight. We cannot say that these findings were clearly erroneous.

Clum argues that, even if the district court did not err in finding a risk of flight, the court impermissibly failed to consider or explain why no alternatives to detention existed. We disagree. The district court specifically found that, based on Clum's conduct, it could conceive of no condition or combination of conditions that would reasonably assure Clum's appearance. The district court was not required to list every possible condition of release and then explain why that condition was inadequate.

We acknowledge that Clum proffered a number of factors suggesting that release would be appropriate, such as his strong involvement with his family, his expressions of remorse at the first detention hearing, his continuous six-year residence in Tennessee, and his lack of any significant criminal history. However, this evidence was not sufficient to outweigh the government's evidence favoring detention, especially evidence of Clum's belief in resisting the authority of the courts—a belief amply supported by Clum's actions. As explained by our sister

10

circuit, a preponderance of the evidence standard does not require a court to "simply weigh, in a mechanical sense, the number of pieces of probative evidence on the government's side against that offered by a [defendant].  Rather, the court makes a judgment about the persuasiveness of the evidence offered by each party . . . ."  Almerfedi v. Obama, 654 F.3d 1, 5 (D.C. Cir. 2011) (citation omitted).  Here, the district court did not clearly err in finding the government's evidence to be more persuasive.  In light of the foregoing, we affirm the district court's order of detention.

**AFFIRMED.**